UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-76 |
| | ) | No. 2:12-CV-354 |
| | ) | |
| GREGORY WILLIAM WARD, | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION**

On September 13, 2011, the federal grand jury returned a two count indictment, [Doc. 1], charging the petitioner, Gregory William Ward ("Ward" or "petitioner") with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count One), and with possession of equipment, chemicals, products, and materials which may be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6) (Count Two). Federal Defender Services of East Tennessee, Inc. was appointed to represent petitioner, [Doc. 4], and on November 7, 2011, retained counsel was substituted, [Doc. 14]. On November 14, 2011, the petitioner, through retained counsel, gave notice of his intent to plead guilty to the indictment, [Doc. 15], and Ward pled guilty on the following day, November 15, [Doc. 16]. Sentencing was scheduled for April 2, 2012, and, on that date, petitioner was sentenced to 72 months of imprisonment as to each count, to run concurrently, [*see* Doc. 23]. Judgment was entered on April 18, 2012, [Doc. 24]. No direct appeal was taken and on August 20, 2012, the petitioner timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, [Doc. 25].

Petitioner's § 2255 motion is currently pending before the Court. The United States has responded in opposition, [Doc. 31], and petitioner has replied, [Doc. 32]. The Court has determined that the files and records in the case conclusively establish that no evidentiary

1

hearing is necessary in the case. For the reasons which follow, petitioner's motion to vacate, set aside, or correct is DENIED.

At the change of plea hearing on November 15, 2011, the following stipulated facts were entered into the record:

> On March 31, 2011, officers met with a confidential informant to conduct an undercover operation where the confidential informant would attempt to purchase a pistol from the defendant, as well as attempt to purchase illegal narcotics and find evidence of the defendant's attempts to manufacture methamphetamine. The confidential informant and his vehicle were searched, and no contraband was found. The confidential informant was then fitted with audio and video recording equipment and given $600 of pre-recorded Carter County Sheriff's Office currency.
> Upon arriving at the defendant's residence, the confidential informant and the defendant discussed the price of the pistol. The defendant then called in his juvenile daughter, who also negotiated the price of the pistol with help from the defendant. The daughter and the defendant agreed to accept $460 from the confidential informant and a hand to hand exchange of the pistol for the cash was recorded. The defendant also provided the confidential informant ammunition for the pistol.
> On April 1, 2011, at about 5:00 PM, Carter County Sheriff's Office officers executed a state search warrant at the defendant's residence. During the search, several items used to manufacture methamphetamine were seized. A large metal drum in the backyard appeared to be a "shake and bake" lab. An outbuilding behind the house contained several methamphetamine lab components and a wood burning stove. Officers recovered $160 in U.S. currency that hd serial numbers matching the bills used to purchase the pistol the day prior. A shotgun and a bolt action rifle were also found at the residence.
> The defendant agreed to speak to investigators. During the interview, the defendant stated that he was a convicted felon. The defendant also told the investigators that he had attempted to "cook" methamphetamine in the past. The defendant stated he began attempting to cook methamphetamine in October of 2010 and his last attempt had been about two weeks before the execution of the search warrant. The defendant said he was unsuccessful at making methamphetamine so he started buying pseudoephedrine to trade for methamphetamine.

2

> Security camera footage of the evening of April 5, 2011 at the Elizabethton, Tennessee Wal-Mart was recovered by investigators. Four clips of footage show the defendant and two other persons coming into the store. The clips further reflect the purchase of Coleman lantern fuel and cold press packs, items used in the manufacture of methamphetamine. Records from the Tennessee Meth Task Force pseudoephedrine database reflect the purchase of 35.76 grams of pseudoephedrine between June 16, 2010 and February 12, 2011 by the defendant.
>
> The firearm sold to the confidential informant by the defendant was a High Standard, model Sport King, .22 caliber semi-automatic pistol, serial number 2453655. The firearms found at the residence on April 1, 2011 were a Polyarms for Armi Effebi, 12 gauge single-shotgun, serial number 17416 and a Keystone Sporting Arms, model Cricket, .22 caliber bold action rifle, serial number 6939. A firearms interstate nexus expert examined all of the firearms recovered from the defendant and determined that the firearms were manufactured outside the State of Tennessee, and therefore necessarily affected interstate commerce. The expert further determined that all of the aforementioned firearms are modern firearms.
>
> On March 2, 2007. On the Western District of North Carolina, the defendant was convicted of possession of a firearm in and affecting interstate commerce by a convicted felon in violation of 18 U.S.C. § 922(g)(1), case number 5:05CR26.

[Agreed Factual Basis, Doc. 18].

Petitioner raises two grounds for relief in his motion. First, he claims that counsel was ineffective by failing to file an immediate notice of appeal despite petitioner's instructions to do so. Second, petitioner claims relief pursuant to the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) and the Fourth Circuit's decision in the *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (*en banc*). In support of his first claim, petitioner submits his own declaration, [Doc. 25-2], in which he declares, under penalty of perjury, that he informed his counsel, before they left the courtroom on the day of sentencing, that he wanted to appeal his case. The United States responds to this claim with the affidavit of retained counsel, [Doc. 31-1], in which counsel swears that he very clearly remembers that Ward never mentioned an appeal

3

at any point and that he would have filed a notice of appeal had he been instructed to do so. He further asserts that he has spoken to petitioner on several occasions subsequent to sentencing and Ward never mentioned an appeal. As to the second claim, the United States responds that neither *Carachuri-Rosendo* nor *Simmons* have any application to petitioner's case.

Petitioner's second claim is easily disposed of. Neither *Carachuri-Rosendo* nor *Simmons* have any application whatsoever to petitioner's case, and, in his reply, petitioner "concedes his **Carachuri-Rosendo** and the **Simmons** grounds are jailhouse lawyer nonsense and should be denied outright." [Doc. 32]. Petitioner's second claim is DENIED.

At first blush, the first claim is not so easily disposed of. The declaration of petitioner and the affidavit of his attorney are diametrically opposed to each other, potentially requiring the Court to conduct an evidentiary hearing, although the United States argues that the Court can decide the matter based upon the affidavits and credit counsel's "particularized, sworn affidavit over petitioner's bald assertions," citing *Cummings v. United States*, 84 Fed. App'x 603, 605 (6th Cir. 2003). Petitioner claims that an evidentiary hearing is required to resolve the credibility dispute, although he cites no Sixth Circuit case in support of his position. The government appears to be correct that the Court may rely on and give credit to counsel's affidavit that petitioner did not timely request or instruct counsel to file a direct appeal. *See Taylor v. United States*, Nos. 1:02-CR-9, 1:10-CV-21, 2012 WL 669521 (E.D. Tenn. Feb. 28, 2012) (citing *Cummings* and collecting cases). *See also Tipton v. United States*, Nos.1:10-CV-84, 1:09-CR-86, 2013 WL 4856197 (E.D. Tenn. Sept. 10, 2013).

The Court need not determine the credibility issue raised by the competing affidavits of petitioner and his trial counsel, however. The petitioner makes it clear in his reply, [Doc. 32], that the only relief he seeks through a direct appeal is application of the recent amendments to

4

the United States Sentencing Guidelines in drug cases to his case. Amendment 782, made retroactive by Amendment 788, reduced the advisory guideline ranges applicable to cases such as the petitioner's and has the potential to reduce the petitioner's sentence to a term of imprisonment of 51 months.

By separate filings, Ward has sought relief from the Court pursuant to Amendments 782 and 788, [see Docs. 29, 34], and an order has been entered by the Court granting his motion to reduce sentence and imposing a 51 month term of imprisonment, [Doc. 36]. Petitioner concedes that if the retroactive amendment is applied to his case then "further appeal would be unnecessary" and he has received all of the relief he seeks in this matter. In fact, Ward states that he "surrender[s] his 18 U.S.C. § 3582, direct appeal, and § 2255 rights" were he to receive a 51 month sentence as a result of these recent amendments. The entry of an order granting his motion to reduce sentence pursuant to 18 U.S.C. § 3582, according to petitioner, "avert[s] the evidentiary hearing, any subsequent direct appeal, and any further collateral proceedings." In light of petitioner's filing, it appears that his first claim has been rendered moot and he, in essence, withdraws his § 2255 motion on that grounds.

**IV.    Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

5

Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Id.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will DENY a certificate of appealibility.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE